VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 26-CC-00002



**Land Use Review Board,**
        **Plaintiff,**

**v.**

**Steve F. Greene,**
        **Respondent**

**MERITS DECISION**

This matter involves an appeal of a civil citation issued by the Land Use Review Board (LURB) to Respondent Steve Greene (Respondent) on April 21, 2025, relating to property located at 2588 Route 103, Cavendish, Vermont (the Property). The citation was issued because Respondent's tenants and their associated business operated a pre-school beginning in April 2025 before receiving a final Act 250 permit amendment changing the Property's use from a restaurant to a school.

The Court held a one-day merits hearing in this matter via Zoom on April 28, 2026. Respondent appeared pro se. The LURB appeared and is represented in this matter by Attorney Benjamin Canellys. Following trial, the Court offered the parties an opportunity to file post-trial memoranda, which were due on May 5, 2026.[1] Thereafter, the Court took the matter under advisement.

### Findings of Fact

1.      Respondent owns the property located at 2588 Route 103, Cavendish, Vermont.

2.      Respondent leases the Property to tenants who are members of a business entity, Bambino University, LLC. For ease of reference throughout this decision, the Court refers to Respondent's tenants and Bambino University, LLC collectively as "tenants."

---

[1] No party filed post-hearing memoranda.

3. Respondent, as landowner, and tenants, as occupants, were co-applicants for an Act 250 permit amendment application, resulting in Act 250 Permit #2S0785-8, which authorized the change of use of the Property from a restaurant to a school, to be operated by Bambino University.

4. Tenants were the primary applicants for the permit amendment, and Respondent did not complete the application himself, nor does he operate the school.

5. The Property lies in a Special Flood Hazard Area (SFHA). ANR Atlas mapping indicates the Property's location in a SFHA. LURB Exhibit 14. Further, the original Act 250 application states the Property is so located.[2] LURB Exhibit 7 at 9.

6. To comply with Department for Children and Families (DCF) childcare licensing requirements, tenants constructed a fence on the Property.

7. The Act 250 amendment application was submitted on February 10, 2025.

8. The permit application was revised three times, on February 9, March 12, and May 9, 2025, in response to incomplete letters sent by the LURB.

9. The District #2 Environmental Commission District Coordinator issued the proposed amended permit on May 24, 2025. This was followed by a 30-day comment period ending on June 24, 2025.

10. The Vermont Agency of Natural Resources (ANR) submitted one set of comments during the 30-day comment period and 3 sets of comments following the comment period.

11. ANR's significant additional comments, going beyond those initially filed, required tenants to undertake additional measures and caused additional delays.

12. As a part of this amendment application, the LURB (at ANR's request) required tenants to demonstrate compliance with anchoring requirements for a fence and provide an evacuation plan for the Property.

13. Tenants supplied ANR and the LURB with a requested anchoring information and evacuation plan on July 17, 2025.

14. The LURB issued final permit #2S0785-8 authorizing Bambino University's change of use on September 19, 2025.

---

[2] While he does not contest that the Property is in a SFHA, Respondent argues—and his testimony was not disputed—that due to conditions imposed by a previous Act 250 permit, the elevation of the Property was raised 2 feet, 4 inches above the base flood elevation. Respondent maintains that he received a flood elevation certificate establishing this alteration. He raised this fact in his written comments on the citation (which were provided to the LURB), although it is not clear to the Court from these filings whether the LURB addressed this comment. Respondent's Exhibit B. The LURB did not independently confirm the flood hazard zone information shown on ANR's Natural Resource Atlas. LURB Ex. 14. Neither the flood elevation certificate nor the prior Act 250 permit was provided to the Court.

15. Tenants began operating the school at the Property prior to the issuance of the final permit amendment in April 2025.

16. Respondent's physical and electronic addresses, to which the LURB sent correspondence, including the relevant civil citation, were correct.

17. There is no evidence of past Act 250 violations by Respondent.

## Discussion

Barring the LURB's adoption of its own rules governing the issuance of civil citations, 10 V.S.A. § 8019 informs the LURB's authority in this area.[3] 10 V.S.A. § 8019. The LURB has the burden of proving the relevant violation occurred by a preponderance of the evidence. 10 V.S.A. § 8013(a). When a respondent timely appeals a civil citation to this Court, 10 V.S.A. § 8012 provides that the Environmental Division has the authority to determine if a violation has occurred and to set the amount of a penalty using the factors set out in § 8010. 10 V.S.A. § 8012(b)(1), (4); 10 V.S.A. § 8010(b). The § 8010 factors are:

(1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) Repealed by 2007, Adj. Sess. No. 191, § 5, eff. July 1, 2008.

(6) the deterrent effect of the penalty;

(7) the State's actual costs of enforcement;

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b).

Thus, this Court must first determine if a violation occurred. Under Rule 34 of the Act 250 Rules, "[c]ommencement of construction on a material change to a pre-existing permitted development . . . without a permit amendment is prohibited." Act 250 Rules, Rule 34(A). Evidence presented at trial establishes that Bambino University opened prior to the LURB's issuance of its final permit amendment. Citation (filed Feb. 26, 2026). The LURB also asserts that because the Property

---

[3] During the merits hearing, counsel for the LURB confirmed that the LURB has not adopted its own rules for the issuance of civil citations.

lies in a mapped SFHA, a prerequisite to issuance of the final permit was the submission of an evacuation plan for the new school. The LURB contends tenants' failure to submit that plan, in conjunction with delays attributable to or requested by ANR, precluded it from issuing the permit until September.

No party disputes that tenants did not submit required information demonstrating conformance with the "No Adverse Impact Standards" under the Flood Hazard Area and River Corridor Protection Procedure (FHARC Procedure) and an evacuation plan until July 17, 2025,[4] which precluded the LURB from issuing the final permit at the conclusion of the permit's original comment period. It is also not disputed that Bambino University began operation at some time in April 2025, prior to the final issuance of Act 250 Permit #2S0785-8. While Respondent himself is not primarily responsible for running the school and may not have been aware of the date the school intended to open, he remains the landowner of the Property, which entails an obligation to comply with applicable laws and regulations. Because Bambino University operated as a school prior to the LURB's issuance of the final permit allowing them to do so, the Court concludes this action violated Act 250 Rule 34.

Having established the existence of a violation in this case, the Court assesses the administrative enforcement factors that will guide the imposition of any penalty. The LURB seeks a penalty of $1,500, the maximum allowable penalty under the citation.[5] Respondent argues for a lower penalty of $300.

I.  Actual or Potential Impact on Public Health/Safety/Welfare/Environment

The Court finds this factor weighs in favor of a larger fine. A principal factor driving the repeated revisions of tenants' application and the commencement of this action was the need to demonstrate conformance with the FHARC Procedure and provide an evacuation plan necessitated by the proposed change in use. These requirements were intended not only to account for the safety of students, but the public at large through the imposition of anchoring requirements for permanent structures and required development of removal procedures for portable structures in accordance with national and state flood safety requirements. See e.g., LURB Exhibit 12 ("Applicant needed to ensure the fence proposed in this application, which is already constructed, meets [Flood Hazard Area and

---

[4] The FHARC Procedure's requirement was intended to ensure that permanently placed wooden fence posts were properly anchored and would not float downstream during a flood event. The evacuation plan was intended to address, in part, how, when, where, and by whom certain portable play equipment would be removed during a flood event. By way of a July 17, 2025 email (LURB Ex. 10), tenants proposed to re-install the fence posts with concrete footings and provided an evacuation and playground clearing plan to ANR.

[5] Although § 8019(a) states that fines shall not exceed $3,000, the maximum penalty listed in the citation provided to the Court was $1,500.

River Corridor Protection Procedure] and National Flood Insurance Program (NFIP) requirements for anchoring.").

Tenants ultimately came into compliance with these requirements and provided for complete anchoring/an evacuation plan. Even so, the period between the school's opening in April 2025 and issuance of the final permit (with conditions confirming anchoring procedures would be appropriately followed and an evacuation plan developed) posed a potential risk to public safety. Had flooding occurred during this period there is a chance the fence or play equipment not timely removed could have collapsed and/or floated downstream, causing harm to people or property. Thus, this factor weighs in favor of a larger fine.

## II. Presence of Mitigating Circumstances

The Court finds this factor weighs in favor of a reduced fine. It appears to the Court that in this instance, the permit application process could have been handled much more efficiently. In this case, the LURB issued a series of incomplete letters to tenants, and they responded by attempting to promptly remedy the deficiencies noted in the application. After the draft permit was issued, ANR provided public comments on the last day of the comment period. Tenants responded by working cooperatively with ANR. ANR then proceeded to provide significant additional comments, going beyond those initially filed, requiring tenants to undertake additional measures and causing additional delays. Despite the fact that the draft permit was posted in May 2025, ANR's increasingly expansive comments following the public comment period postponed tenants' ultimate acquisition of a permit. While it may well have been within the LURB's discretion to allow this process to play out as it did throughout the summer of 2025, the 4-month delay after the draft permit was posted is a mitigating factor to consider in this case, weighing in favor of a lesser fine. [6]

---

[6] In this instance, ANR submitted their first comments on June 24, the final day of the comment period for the permit. These comments concerned anchoring the already-built fence to conform with State flood safety regulations. These were followed by comments on July 1, stating the parties had mutually agreed to work together in good faith, and that ANR would submit additional comments by July 18. Tenants provided ANR with their proposal to anchor the fence posts and evacuation plan on July 17. ANR provided a third set of comments on July 18, noting receipt of the evacuation plan and further addressing the fence. It also raised a new potential issue regarding wetlands regulations that appears, at least in part, to have been triggered by ANR's other requirement to anchor the fence in a way that minimized the risk of lateral movement and flotation. The final set of comments, submitted on September 10, 2025, notes a wetland ecologist visited the Property on July 24 and found it complied with appropriate wetland regulations, and approved tenants' plan for anchoring the fence. The comments provide no explanation for the nearly two-month delay between receipt of the anchoring information/evacuation plan, the ecologist's approval, and the submission of final comments. As noted above, the Court recognizes that the LURB likely has some discretion on how to proceed in the public comment process, and the Court makes no ruling upon that process in this case. The Court struggles to understand, however, the LURB's decision to pursue to the maximum available penalty in a situation where it is clear the Applicant made repeated good-faith efforts to comply with the application process, the draft permit was posted in May 2025, and the original timeline for the final permit was significantly extended due to apparent administrative delay.

III. Respondent's Knowledge of Violation/Record of Compliance

Factors three and four weigh in favor of a moderate fine. Respondent did not complete the application, his tenants were the primary applicants, and he was not aware he would be fined if the school opened without an amended Act 250 permit in place. At the same time, Respondent conceded that his physical and electronic addresses to which the LURB had been sending correspondence, including the relevant civil citation, were correct. He conceded that he had likely received this correspondence if it had been sent to those addresses. This supports the conclusion that even if Respondent did not have actual knowledge of the violation, he was likely on reasonable inquiry notice. This weighs in favor of a moderate fine.

Respondent's record of compliance weighs in favor of a lesser fine. The Court has no evidence relating to Respondent's record of compliance outside of this matter.[7] Regarding this matter, this Court has established that Bambino University opened without a permit in April 2025 and remained open without a permit until September 19, 2025. No party disputes they are now fully in compliance with Act 250 regulations. The evidence presented to the Court shows that Respondent's tenants, the primary members of the Applicant in this case, largely complied with the LURB's/ANR's directives throughout the process, and responded promptly to remedy deficiencies in their application noted by the LURB/ANR. Thus, this factor weighs in favor of a lesser fine.

IV. Deterrent Effect of Penalty/Actual Costs of Enforcement/Length of Time Violation Has Existed

The deterrent effect of the penalty weighs in favor of a lesser fine. Throughout the permit amendment process, tenants made significant efforts to comply with the LURB's directives in a prompt and efficient manner, going through repeated rounds of revisions to the application and remedying deficiencies within a month at most. The business is now fully in compliance with Act 250. While it is clear that Bambino University began operating prior to the final issuance of the permit amendment, it is not alleged that this operation was substantially different from what was allowable under the finally issued permit and portions of the delay in obtaining that permit were largely out of tenants' control. Thus, the Court concludes the deterrent effect of the penalty here weighs in favor of a reduced fine.

The Court received no information on the LURB's costs of enforcement. Thus, this factor weighs in favor of a lesser fine.

---

[7] Respondent has participated in the Act 250 permitting process in the past and generally supports Act 250.

The length of time the violation has existed weighs in favor of a moderate fine. All parties agree that Bambino University opened in April 2025 and was permitted by September 19, 2025. Assuming the school opened on or about April 1, the violation would have existed for approximately 171 days.[8] This is a significant amount of time, particularly considering Respondent should have been aware of the violation by April 21, the date the citation was issued. As this Court has noted, however, the timeline in this case was significantly extended due to administrative delay. At least some portion of the length of time the violation has existed cannot be solely attributed to Respondent or Bambino University. For this reason, this factor weighs in favor of a moderate fine.

V. Fine Imposed

For the foregoing reasons and with consideration of the above factors, the Court imposes a $500 fine for the period of violation running from April 2025 to September 19, 2025.

## Conclusion

For the reasons set forth herein, the Court finds Respondent violated Act 250 Rule 34 when his tenants operated a school at the Property from April 2025 to September 19, 2025. The Court imposes a $500 fine as a result of that violation. Respondent shall pay the fine imposed to the LURB within 30 days of the date of this Decision.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed this May 21, 2025 pursuant to V.R.E.F. 9(D).

Joseph S. McLean
Superior Court Judge
Environmental Division

---

[8] No daily penalty accrues under a civil citation, so the exact number of days of violation is not critical to the Court's penalty analysis in this case. Remedies for continuing violations are addressed under 10 V.S.A. § 8019(b).